**2015 UT App 258**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JUSTIN NUZMAN,
Appellant.

Memorandum Decision
No. 20140121-CA
Filed October 16, 2015

Second District Court, Farmington Department
The Honorable Glen R. Dawson
No. 131700806

Scott L. Wiggins, Attorney for Appellant

Sean D. Reyes and Brett J. DelPorto, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and JOHN A. PEARCE concurred.

TOOMEY, Judge:

¶1　Justin Nuzman appeals his sentence, arguing that his trial counsel rendered ineffective assistance by not asserting that Nuzman's mental health issues were a defense or a mitigating circumstance prior to the court imposing sentence. We affirm.

¶2　On October 29, 2013, Nuzman pled guilty to burglary, a second-degree felony; theft, a third-degree felony; and unlawful possession of a financial transaction card, a third-degree felony. As part of Nuzman's plea negotiations, the State agreed to refer his Davis County case to Salt Lake County for screening to determine his eligibility for Salt Lake County's mental health court. The State also agreed to reduce the degree of offense of some of his charges if Nuzman successfully completed mental

health court. In his plea affidavit, Nuzman stipulated to exercising "unlawful control over the property of another" and to having "two prior theft convictions." He also acknowledged that the maximum sentence for each crime might be imposed and that a denial of his mental health court request would not be a "valid reason to seek a withdrawal" of his guilty pleas.

¶3　The trial court entered Nuzman's guilty plea and agreed to refer him to mental health court. The parties agreed that Nuzman would remain incarcerated until his transfer to mental health court.

¶4　One month later, Nuzman's case had not yet been transferred to mental health court. His counsel informed the trial court that Nuzman was "incredibly concerned about being in jail" and about "not getting the appropriate mental health treatment." The State acknowledged Nuzman's mental health needs and informed the court that Nuzman had the "appropriate diagnosis" from Valley Mental Health to be accepted into mental health court but explained that referral to mental health court took time, especially considering that the transfer required authorization from both the Davis County District Attorney and the Salt Lake County District Attorney. Nuzman's counsel then requested that Nuzman be released pending the referral so that he could receive mental health treatment not available in jail. She explained that Nuzman could be released to "go right back in at Valley" as he "was a wonderful participant before" "with a good therapeutic relationship with his providers." The court denied the request, but indicated that it would "probably" release Nuzman if the State did not resolve the transfer issue soon.

¶5　One week later, Nuzman still had not been approved for mental health court and his counsel again requested that he be released so he could receive mental health treatment. The State told the court it needed another week to determine whether Salt Lake County would accept Nuzman into mental health court.

The court acknowledged the State's request and, after independently investigating the process, informed the parties that it was not unusual for mental health court screening to take nearly six weeks. The State stipulated to releasing Nuzman in the interim but indicated it would like to have a review hearing two or three weeks later. The court set the review hearing for two weeks later, December 10. Nuzman interjected, "Your Honor, I have court and sentencing in Las Vegas on the 3rd." Nuzman's counsel and the State each indicated that they were not aware of Nuzman's pending sentencing in Nevada. In response, the State asserted, "Judge, I can tell you right now he's not getting into Salt Lake's mental health court program. I'm confident. With that piece of information that [Nuzman] shared with us about a pending case down in Nevada, . . . my guess is that the Salt Lake DA's going to say no." Nuzman's counsel responded that she wanted to "undo the plea" if Nuzman's pending Nevada case would deny him admission in mental health court.

¶6     Later the same day, the State informed the court that it had confirmed Nuzman's Nevada conviction and pending sentencing. The State also contacted the Salt Lake County District Attorney to update him on Nuzman's case. The District Attorney refused to accept Nuzman into the Salt Lake County mental health court program until the Nevada case was resolved. The State then withdrew its agreement to refer Nuzman's case to Salt Lake County for mental health court. The State also withdrew its stipulation to release Nuzman. The prosecutor stated, "[B]ut for [Nuzman's] candor we wouldn't be aware of the Nevada case as I stand here today. So I give him credit for that. But it does cause me pause for concern that we have a situation where . . . he's got a pending sentence in Nevada that may or may not end up being a felony."

¶7     Concerned that Nuzman would not have the benefit for which he had bargained, Nuzman's trial counsel asked the

court to withdraw Nuzman's current plea, to enter new pleas of a lesser degree, and to agree to a presentence investigation report. She then emphasized that "mental health issues are a big concern" in his case. The State disagreed with Nuzman's counsel's suggestion, stating, "[T]here is language in [the plea agreement] that if he doesn't get into mental health court in Salt Lake, that doesn't invalidate the plea. That's not a basis to withdraw the plea." The State then changed its position, stipulating to Nuzman's release. Nuzman's trial counsel asked that Nuzman be offered probation, proposing that the State lower the degree of Nuzman's offenses upon successful completion of probation. The court granted the stipulated request for release. But in response, the State explained that Nuzman's "performance between now [until sentencing]" would likely "weigh heavily" on their sentencing recommendations and their willingness to lower the degree of his offenses.

¶8    At the sentencing hearing, Nuzman's counsel explained that after his release from jail, Nuzman had received therapy and medication from Valley Mental Health and had been "successful as long as . . . he was on his medicine." She reiterated that if Nuzman had not been honest, the State would not have been aware of his Nevada case. She again asked the court to impose probation rather than a prison term so Nuzman could continue to participate in mental health treatment. The court ultimately sentenced Nuzman to one one-to-fifteen years indeterminate prison term and two zero-to-five years indeterminate prison terms. It ordered those terms to run concurrently and suggested that, at an appropriate time, the parole board release Nuzman to Northern Utah Community Correctional Center to participate in its treatment program. Nuzman now appeals his sentence.

¶9    Represented by new counsel on appeal, Nuzman contends that his trial counsel rendered ineffective assistance by

failing to pursue mental health treatment and by failing to assert his mental health problems as a defense or as a mitigating circumstance at sentencing. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (alteration in original) (citation and internal quotation marks omitted).

¶10    To establish that his trial counsel rendered ineffective assistance, Nuzman must demonstrate (1) that his "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that his counsel's performance was deficient, Nuzman "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Then, even if Nuzman overcomes the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he must still demonstrate prejudice. *Id.* at 689, 692.

¶11    Although Nuzman acknowledges that trial counsel, "both prior to and at sentencing," recognized his serious mental health issues and his need for medication and supervision, he argues that his trial counsel's failure to "specifically request that the sentencing court consider [Nuzman's] mental illnesses as a defense or mitigating circumstance at sentencing" "fell below an objective standard of reasonable professional judgment."

¶12    This argument is not persuasive in view of his trial counsel's persistent focus on Nuzman's mental health in virtually every encounter with the trial court. Nuzman concedes that trial counsel "represented to the court on more than one occasion that [Nuzman] . . . was 'incredibly concerned' about being in jail and not getting proper mental health treatment."

But, in addition to that, at every phase of the proceedings in this case, trial counsel raised the issue of Nuzman's mental illness. She asked the court to transfer the case to Salt Lake County so Nuzman could participate in mental health court. Alternatively, she asked that the court release Nuzman to participate in mental health treatment not otherwise available in jail. Later, trial counsel encouraged the court to allow Nuzman to complete probation instead of serving a prison sentence so he could continue to receive treatment from Valley Mental Health. Furthermore, trial counsel emphasized how much Nuzman improved after effective treatment and receiving medication. She even attempted to withdraw Nuzman's guilty pleas but could not because his plea agreement contained language that prevented him from doing so. Under these circumstances, we cannot say trial counsel's performance fell below an objective level of reasonableness.

¶13 Because Nuzman has not overcome the strong presumption that his trial counsel's performance was "within the wide range of reasonable professional assistance," we do not address the prejudice element of his ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 689. We therefore conclude that Nuzman has failed to demonstrate that he received ineffective assistance from his trial counsel. Accordingly, we affirm.

_____